[No. 20617.   In Bank.—June 6, 1890.]

## THE PEOPLE, RESPONDENT, v. JOHN HANSEN, APPELLANT.

CRIMINAL LAW—LARCENY—OPEN TAKING FROM INTOXICATED PERSON—SECRET INTENT TO STEAL.—A conviction for larceny will be sustained, notwithstanding an undisputed avowal of intention, at the time of taking money openly from a sleeping and intoxicated friend, that it was done for the purpose of taking care of it for him, if the subsequent conduct of the accused is such as that the jury might find therefrom a secretly entertained intent to convert the money larcenously to his own use at the time of the taking.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion.

*Edgar D. Peixotto*, for Appellant.

*Attorney-General Johnson*, for Respondent.

FOOTE, C.—The defendant, Hansen, was convicted of grand larceny. He appeals from the judgment therein rendered, and from an order denying him a new trial.

The sole ground upon which he bases his contention for a reversal of the judgment and order is that the evidence entirely fails to support the verdict of the jury.

His claim is, that the money which he was charged to have stolen was in fact taken by him from the clothes of his sleeping friend for safe-keeping; that the friend was drunk in a restaurant, and the money alleged to have been stolen was taken openly, in the presence of two other persons, with the avowed intention to keep it safely until the friend and companion should awake and become sober.

The evidence does, without conflict, show that the taking was open, and in the presence of other persons, and with the avowed intention of taking care of it for the sleeping and intoxicated friend. The doubt which is thrown upon the transaction as being *bona fide,* and as really accompanied by the avowed intent, is the subsequent conduct of the defendant, which throws light upon the true and secretly entertained intent to convert the money larcenously to his own use at the time of the taking.

The defendant was without means, a man of mature age, who fell in with a boy at a lumber camp in Sonoma County. The boy had something over $170, and after some little acquaintance between them, the defendant desiring, as he said, to go to Seattle, the boy offered to pay his expenses there and to accompany him.

In pursuance of this plan, the two came to San Francisco, and proceeded to get intoxicated, after which they went to a restaurant, and the boy lay down on a lounge, with the apparent desire to sleep off his intoxication; the defendant, not so drunk as his companion, took $150, in seven twenty and two five dollar gold coins, from a vest of the boy, which he had taken off and placed under his pillow. This was done in the presence of Gustave Dallinge, a cook and waiter in the restaurant, and of a Mrs. Oswaldt.

The defendant then went off, and purchased a ticket for himself and the boy to Seattle, for which he paid twenty dollars, and, getting drunk after a while in a saloon, was put in jail by a police-officer.

He was found then to have a hundred dollars in gold upon him, and a little less than a dollar in silver, and a knife belonging to the boy. He got out of jail, and, because he was not then considered sober, the property-clerk of the police court, where the money taken from him was on deposit, gave him a receipt for the money, but would not give him the money itself. He then went back to where he had left the boy, a day or so having elapsed since he had been there, and asked for his "son," as he called the boy. The boy was there, and at once grabbed him and demanded his money. The defendant told the boy that he had a receipt for the money, and that it was in the city hall. The latter would not take the receipt, but made an outcry for the police, and the defendant was arrested.

According to the evidence of the policeman who arrested him, before he returned to the restaurant, the defendant had been in a saloon and was drunk and boisterous, displaying money, and in company with parties before whom, had he been sober, he would not have made the display; he told the policeman a rambling story about the money he had being his own and was for the support of his wife, and that if it was taken from him he could not support her, and that he thought of making a trip to Europe and spending a good deal of money, etc. When searched, preparatory to being "booked" in the jail for being drunk, a hundred dollars in gold coin were found on him, as well as less than a dollar in silver, a knife, and a bag in which the gold was, which bag was the boy's.

The defendant had no money when he started to accompany the boy to San Francisco, and the boy paid his expenses and gave him money to the amount, alto-

gether, of eight dollars and a half before the alleged theft.

While absent from the boy, after the taking of the money, the defendant had his whiskers shaved off, and when the officer came into the saloon where the defendant was drunk, he sought to avoid him and ran away. What became of some thirty dollars of the money taken, the defendant could not account for.

The jury were evidently impressed with the belief that the avoidance by the defendant of a police-officer as soon as he saw him coming into the saloon, his shaving off his whiskers, and his conduct in apparently recklessly drinking and spending money not his own, and other circumstances in the case, evidenced on the part of the defendant a felonious intent to take and carry away the money in the first instance, which, as he could not do secretly, he did boldly and openly, and with the declared intent to take care of it, but secretly to steal it.

It is urged here that the case of *People* v. *Stewart*, 80 Cal. 129, where the judgment was reversed, was not so strong a case on the evidence in favor of the innocence of the defendant there as are the facts shown here. With this contention we cannot agree. The conduct of Stewart at the time of the taking, and ever after, was to all appearances totally devoid of any felonious intent, and without any of the suspicious circumstances as appeared in the conduct of the defendant here, subsequent to the taking.

We therefore advise that the judgment and order be affirmed.

Vanclief, C., and Gibson, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.